IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEPHANIE HARRIS, | : |
| | : |
| Plaintiff | : Civil Action No. 1:09-cv-1449 |
| | : |
| v. | : (Chief Judge Kane) |
| | : |
| HARLEY-DAVIDSON MOTOR | : |
| COMPANY OPERATIONS, INC., | : |
| | : |
| Defendant | : |

**MEMORANDUM**

Pending before the Court is Plaintiff's motion to compel discovery.[1] (Doc. No. 26.) Both parties have submitted briefs, and the motion is ripe for disposition. For the reasons that follow, Plaintiff's motion to compel discovery will be granted in part and denied in part.

**I.    BACKGROUND**

In her complaint, Plaintiff alleges employment discrimination on the basis of race and gender pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2; claims under the Civil Rights Act of 1991, 42 U.S.C. § 1981 for breach of contract and as a companion to her Title VII claims; and discrimination on the basis of race and gender under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, et seq. (Doc. No. 18.) Plaintiff claims she was treated less favorably than similarly situated non-African-American employees and similarly situated male employees. (Id. ¶ 15.) Plaintiff avers that, beginning around July 2007, she was harassed by a fellow employee. (Id. ¶¶ 17-24.) Plaintiff made several complaints

---

[1]Plaintiff's motion to compel was raised verbally at a telephone conference on July 15, 2010, and the Court ordered briefing on the issue. (Doc. Nos. 24, 25.)

1

to Defendant regarding this behavior.  Id.  However, Defendant told her not to contact Human Resources again and intentionally failed to respond to the fellow employee's actions.  (Id. ¶¶ 25, 26.)

On May 14, 2010, Plaintiff sought discovery in the form of interrogatories and document requests.  (Doc. No. 26 at 1.)  Defendant objected to Interrogatories 2, 3, 6, 7, 8, 17, 18, and 26 as overly broad, unduly burdensome, and not likely to lead to discovery of relevant information.  (Doc. No. 27, Ex. A.)  On June 28, 2010, Defendant supplemented its initial discovery responses with limited responses to the disputed interrogatories.  (Id.)  Specifically, Defendant limited the scope of its responses to information regarding African-American assemblers working on the third shift at Defendant's York facility between September 2006 and March 2009.  (Id.)  Defendant also objected to Document Request 6, which asked for the personnel files of the employees named in response to Interrogatories 2, 6 and 17.  (Id.)  At a telephone conference on July 15, 2010, the parties brought the ongoing dispute to the Court's attention, and the Court ordered briefing on the issue.  (Doc. No. 25.)

## II.    STANDARD OF REVIEW

"It is well-established that the scope and conduct of discovery are within the sound discretion of the trial court."  Marroquin-Manriques v. Immigration and Naturalization Serv., 699 F.2d 129, 134 (3d Cir. 1983).  The Federal Rules of Civil Procedure permit discovery of "any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  Discovery is not limited solely to admissible evidence but encompasses matters which "appear[ ] reasonably calculated to lead to the discovery of admissible evidence."  Id.  Federal Rule of Civil Procedure 37 allows a party who has received evasive or incomplete discovery

responses to seek a court order compelling additional disclosure or discovery. The party seeking the order to compel must demonstrate the relevance of the information sought. Goodman v. Wagner, 533 F. Supp. 255, 258 (E.D. Pa. 1982). The burden then shifts to the opposing party, who must demonstrate in specific terms why a discovery request does not fall within the broad scope of discovery or is otherwise improper. Id.

## III. DISCUSSION

Plaintiff seeks to compel a response to Interrogatories 2, 3, 6, 7, 8, 9, 17, 18 and 26. Plaintiff also seeks to compel production of documents in response to Document Request 6. The Court will address the disputed interrogatories and the discovery request in turn.

### A. Interrogatories

As a preliminary matter, Plaintiff asserts that Defendant failed to completely answer Interrogatory 9 because it did not provide the last known address and telephone number of every person identified. (Doc. No. 26 at 1.) Defendant contends that it provided this information for each individual that Plaintiff sought to depose. (Doc. No. 27 at 2.) Assuming that Plaintiff did not receive the address and telephone number of every individual listed, the Court finds that Defendant shall fully respond to Interrogatory 9 with the requested information.

Plaintiff's remaining disputed interrogatories request information relating to the identity of certain persons employed by Defendant, as well as information regarding claims made with or against Defendant alleging various forms of harassment. Specifically, Interrogatories 2 and 3 request the identity, "dates of employment, and reasons for separation" of all persons employed by Defendant as assemblers "from 2003 through 2008 who were of African, African-American, or Hispanic ethnicity/heritage." (Doc. No. 26 Ex. A.) Interrogatories 6, 7 and 8 request the

3

identity of "each and every employee who has complained of general harassment, sexual harassment, ethnic harassment, or being made to feel uncomfortable by another employee's actions or words" from July 9, 2002 through 2008, as well as the complaining employee's race, the accused person's identity and race, details of the complaint, and Defendant's response to the complaint.[2] (Id.) Interrogatories 17 and 18 request the identity of "any employee of African, African-American, or Hispanic ethnicity/heritage that was disciplined or terminated for behavior that made other employees uncomfortable, racial harassment, sexual harassment, or general harassing behaviors" and a complete description of the behavior and resulting discipline. (Id.) Finally, Interrogatory 26 requests information regarding any complaint "filed with Defendant, its partners or affiliates, or in any agency, including EEOC and PHRC, against Defendant, its partners or affiliates alleging disparate treatment, discrimination, harassment or wrongful termination since 2003." (Id.)

Defendant objects to these requests as overly broad, unduly burdensome, and not likely to lead to admissible evidence. Defendant argues that the temporal and geographical scope of Plaintiff's interrogatories should be limited. (Doc. No. 27 at 3, 4.) Defendant also asserts that discovery should be tailored to Plaintiff's claim of disparate treatment. (Id. at 5.) The Court will address each argument in turn.

    **i.**     **Temporal Scope**

Interrogatories 2, 3 and 26 seek information dating from 2003 through 2008. For Interrogatories 6, 7, 8, 17 and 18 Plaintiff requests information relating back to July 9, 2002, five

---

[2] While Interrogatories 6, 7, 8, 17 and 18 originally requested information dating back to 1998, Plaintiff has changed her request to information dating back to July 9, 2002. (Doc. No. 26 at 3.)

4

years before her first allegation of discriminatory treatment. Defendant argues that the temporal scope of discovery should be limited to the time period during which Plaintiff was employed by Defendant and a reasonable time period subsequent to the filing of her complaint with the Pennsylvania Human Relations Commission. (Doc. No. 27 at 3.) Thus, Defendant limited its responses to a period between September 2006 and March 2009.

Courts discussing the temporal scope of discovery in a Title VII case have permitted discovery for a reasonable time period that predates a plaintiff's claims.[3] After balancing the relevance of the information against the burden on Defendant, the Court finds Plaintiff's request for information dating back to 2003 to be a reasonable temporal scope of discovery for all disputed interrogatories. Therefore, the time period for information requested in Interrogatories 2, 3, 6, 7, 8, 17, 18 and 26 shall date from 2003 through 2009.

      ii.      **Geographical Scope**

Interrogatories 2 and 3 request information regarding assemblers employed by Defendant. Interrogatories 6, 7, 8, 17, 18 and 26 appear to seek company-wide information

---

[3]See, e.g., Miller v. Hygrade Food Prods., 89 F. Supp. 2d 643, 657 (E.D. Pa. 2000) ("It is well established that discovery of conduct predating the liability period of a Title VII lawsuit is relevant and courts have commonly extended the scope of discovery to a reasonable number of years prior to the liability period of a Title VII lawsuit."); see also James v. Newspaper Advocacy Corp., 591 F.2d 579, 582 (10th Cir. 1979) (finding four years prior to liability period reasonable); Gen. Ins. Co. v. EEOC, 491 F.2d 133 (9th Cir. 1974) (finding eight years prior to liability period to be excessive); EEOC v. Kan. City S. Ry., 195 F.R.D. 678 (D. Kan. 2000) (allowing discovery four years prior and one year after alleged discriminatory conduct); Raddatz v. Standard Register Co., 177 F.R.D. 446, 448 (D. Minn. 1997) (allowing discovery into the period two years after termination); Lyoch v. Anheuser-Busch Co., Inc., 164 F.R.D. 62, 67 (E.D. Mo. 1995) (finding four years prior to liability period reasonable); Hicks v. Arthur, 159 F.R.D. 468, 471 (E.D. Pa. 1995) (allowing discovery to extend to the period two years after Plaintiffs' tenure); Stevenson v. Gen. Elec. Co., No. C-1-77-122, 1978 WL 150, at *1 (S.D. Ohio Oct. 4, 1978) (noting emergence of a "five year rule").

regarding complaints of varying forms of harassment, as well as company-wide information regarding all African, African American, or Hispanic employees disciplined or terminated for harassing behavior. Plaintiff asserts that company-wide information is relevant because the decision to discipline Plaintiff was made not only by her immediate supervisors but also Human Resources and "the hierarchy of Defendant." (Doc. No. 26 at 4, 5.) Defendant argues that Plaintiff is not entitled to company-wide discovery and thus has limited its responses to information regarding union-covered assemblers working on the third shift at Defendant's York facility.[4] (Doc. No. 27 at 4.) In support of its argument, Defendant claims that company-wide discovery would pose an undue burden. Defendant also asserts that Plaintiff's requests are relevant only to the extent that they seek information regarding employees supervised by Plaintiff's supervisors. (Id.)

Plaintiff cites the Supreme Court's opinion in Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379 (2008) in support of her argument that an inquiry into Defendant's discriminatory or retaliatory behavior toward other employees may be relevant, even if those employees had different supervisors. The Court in Mendelsohn found that evidence offered in a discrimination case concerning employees with different supervisors is neither per se admissible nor per se inadmissible. Id. at 388. However, Mendelsohn is not directly applicable here. Under Federal Rule of Civil Procedure 26(b)(2)(C), the Court may limit the extent of discovery if the burden or expense outweighs its likely benefit, even if the proposed discovery may arguably lead to

---

[4]Defendant has limited its responses to information regarding union-covered employees because all of Defendant's union-covered employees at the York facility are governed by the same collective bargaining agreement and thus share the same terms and conditions of employment. Plaintiff does not object to this limitation, and the Court finds that such limitation is proper.

6

admissible evidence. Additionally, Plaintiff is not automatically entitled to company-wide discovery, absent a showing of particularized need and relevance for the requested discovery. Miles v. Boeing Co., 154 F.R.D. 117, 120 (E.D. Pa. 1994). If Plaintiff does show a particularized need and relevance, Defendant must introduce facts "supporting its contention of undue burden or demonstrate that decisions affecting the plaintiff were made at a facility level rather than on a centralized basis." Syed v. Director, FBI, No. Civ. A. 90-1801, 1990 WL 259734, at *3 (E.D. Pa. Jan. 30, 1991) (citations omitted).

Defendant employs approximately 3,000 assemblers working three shifts at its York facility. (Doc. No. 27 at 4.) All employees on the third shift share the same supervisors and information about them may directly bear on Plaintiff's claims. (Id.) Because at this juncture, it is not clear that wider discovery is necessary or relevant, the Court concludes that it would create an undue burden on Defendant to produce information regarding employees who did not share the same supervisors as Plaintiff, and that company-wide information would create an even greater burden. Thus, after balancing the burden on Defendant against the relevance of the information, the geographical scope of discovery for Interrogatories 2, 3, 6, 7, 8, 17, 18 and 26 should be limited to information regarding union-covered employees working as assemblers on the third shift at Defendant's York facility.

   iii. **Claim of Disparate Treatment**

Plaintiff is an African-American woman alleging disparate treatment on the basis of her race and gender. Interrogatories 2, 3, 17 and 18 seek information regarding Defendant's African, African-American, and Hispanic employees. Interrogatories 6, 7, 8 and 26 request information regarding claims or complaints made by all employees. Defendant has limited its response to the

above interrogatories to information concerning African-American employees, arguing that discovery must be tailored to Plaintiff's claim of disparate treatment. (Doc. No. 27 at 5.) After balancing the relevance of the information against the burden on Defendant, the Court concludes that the scope of Interrogatories 2, 3, 17 and 18 should be limited to information regarding Defendant's African-American employees. In addition, in consideration of Plaintiff's assertion in her complaint that she was treated less favorably than similarly situated non-African-American and male employees, the Court finds that the scope of Interrogatories 6, 7, 8 and 26 should not be limited to a specific race or gender.

Interrogatories 6, 7 and 8 request information relating to employees who complained of "general harassment, sexual harassment, ethnic harassment, or being made to feel uncomfortable by another employee's actions or words." (Doc. No. 26 Ex. A.) Interrogatories 17 and 18 request information regarding employees who were disciplined or terminated for "behavior that made other employees uncomfortable, racial harassment, sexual harassment, or general harassing behaviors." (Id.) Finally, Interrogatory 26 requests information regarding any complaint alleging "disparate treatment, discrimination, harassment, or wrongful termination" filed against Defendant, its partners or affiliates. (Id.)

Plaintiff asserts these requests are relevant to show a pattern and practice of indifference to the rights of non-whites and women. (Id. at 5.) Defendant objects to these requests as overly broad, arguing that discovery should be tailored to Plaintiff's disparate treatment claim. (Doc. No. 27 at 5.) In determining the scope of discovery of information in a disparate treatment case, courts have imposed restrictions as to the type of discrimination alleged, such as race, age, or sex. See, e.g., Syed, 1990 WL 259734, at *3. After balancing the burden on Defendant against

the relevance of the information, the Court agrees with Defendant's limitations. Therefore, the Court finds that the scope of Interrogatories 6, 7 and 8 is properly limited to employee claims of racial or sexual harassment filed with Defendant. The scope of Interrogatories 17 and 18 is properly limited to disciplinary actions or terminations as a result of racial or sexual harassment. Finally, the scope of Interrogatory 26 is properly limited to claims of sex- or race-based discrimination or harassment filed against Defendant, not its partners or affiliates.

**B.     Document Request**

Plaintiff's Document Request 6 seeks a copy of all "employment records and disciplinary records" for the employees listed in Interrogatories 2, 6-10 and 17. (Doc. No. 26 Ex. A.) In light of the Court's findings on the scope of Plaintiff's interrogatories, Plaintiff's document request seeks the personnel records of all union-covered employees employed as assemblers on the third shift at Defendant's York facility from 2003 through March 2009 who: (1) were African American, (2) complained of racial or sexual harassment, or (3) were African American and were disciplined or terminated for racial or sexual harassment. Defendant objects to this request, claiming that it seeks the production of irrelevant, private or confidential documentation not reasonably likely to lead to the discovery of admissible evidence. (Id.)

The Court agrees that Plaintiff's requests are overbroad. Although personnel files are discoverable, they contain confidential information and discovery of them should be limited. See, e.g., Reagan-Touhy v. Walgreen Co., 526 F.3d 641, 648 (10th Cir. 2008) ("Personnel files often contain sensitive personal information . . . and it is not unreasonable to be cautious about ordering their entire contents disclosed willy-nilly. . . . This is not to say personnel files are categorically out-of-bounds."); Miles v. Boeing Co., 154 F.R.D. 112, 115 (E.D. Pa. 1994)

9

("[P]ersonnel files are confidential and discovery should be limited."). The Court must weigh the right to relevant discovery against the privacy interest of non-parties. The Court finds that Plaintiff is not entitled to the entire personnel records of all the individuals without a more particularized showing of relevance.

However, given Plaintiff's allegations that when she complained of her fellow employee's harassment she was treated differently than similarly situated employees on account of her race and gender, the Court finds that Plaintiff is entitled to limited discovery of the personnel files of the employees listed in response to Interrogatories 6, 7 and 8.[5] Nevertheless, the proper balance between these non-party third persons' privacy interests and the discovery interests of Plaintiff is to assure that only those portions of the personnel files that are clearly relevant to Plaintiff's claim be open to disclosure, with confidential and private information redacted. Thus, Defendant shall provide only information relevant to the complaint of racial or sexual harassment, Defendant's response to the complaint, and discipline subsequent to the complaint. Defendant need not provide any other information contained in the personnel file.

## III. Conclusion

For the foregoing reasons, Plaintiff's motion to compel is granted in part and denied in part. An order consistent with this memorandum will follow.

---

[5] See Chiaradonna v. Rosemont Coll., No. 06-1015, 2006 WL 374277, at *2 (E.D. Pa. Dec. 11, 2006) ("Ordinarily, discovery of personnel records is permissible only for parties or similarly situated employees and the court has tailored the disclosure to the relevant issues."); Northern v. City of Phila., No. Civ. A. 98-6517, 2000 WL 355526, at *3 (E.D. Pa. April 4, 2000) (allowing discovery of personnel records of employees who were similarly situated to plaintiff because they were charged with the same violations).

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHANIE HARRIS, | : | |
| | : | |
|     Plaintiff | : | Civil Action No. 1:09-cv-1449 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| HARLEY-DAVIDSON MOTOR | : | |
| COMPANY OPERATIONS, INC., | : | |
| | : | |
|     Defendant | : | |

# ORDER

**AND NOW,** on this 10th day of November 2010, upon consideration of the briefs filed in this matter (Doc. Nos. 26, 27), **IT IS HEREBY ORDERED THAT**:

1. Defendant is **ORDERED** to respond to Interrogatory 9 with the last known address and telephone number for each individual identified.

1. Defendant is **ORDERED** to respond to Interrogatories 2 and 3 with the requested information regarding all union-covered African American employees employed as assemblers on the third shift at Defendant's York facility from 2003 through March 2009.

2. Defendant is **ORDERED** to respond to Interrogatories 6-10 with the requested information regarding all union-covered employees employed as assemblers on the third shift at Defendant's York facility who complained of racial or sexual harassment from 2003 through March 2009.

3. Defendant is **ORDERED** to respond to Interrogatories 17 and 18 with the requested information regarding union-covered African American employees employed as assemblers on the third shift at Defendant's York facility who were disciplined or terminated for racial or sexual harassment from 2003 through March 2009.

4. Defendant is **ORDERED** to respond to Interrogatory 26 with the requested information regarding all union-covered employees employed as assemblers on the third shift at Defendant's York facility who filed a complaint with Defendant from 2003 through March 2009 alleging sex- or race-based discrimination or harassment, or who filed a complaint from 2003 through March 2009 in any agency, including the EEOC and PHRC, against Defendant alleging sex- or race-based discrimination or harassment.

5. Defendant is **ORDERED** to respond to Document Request 6 with responsive documents to Interrogatories 6, 7 and 8 to the extent that the information sought is relevant to the complaint of sexual or racial harassment, Defendant's response to said complaint, and discipline subsequent to the complaint. Defendant shall redact private and confidential information.

    S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania