# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEPHANIE HARRIS,** | : | |
| **Plaintiff** | : | **Civil Action No. 1:09-cv-1449** |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **HARLEY-DAVIDSON MOTOR** | : | |
| **COMPANY OPERATIONS, INC.,** | : | |
| **Defendant** | : | |

## MEMORANDUM ORDER

Presently pending before the Court is the Report and Recommendation of Magistrate

Judge Methvin (Doc. No. 48) addressing Defendant's motion for summary judgment (Doc. No.

28), as well as objections thereto filed by Plaintiff (Doc. No. 49).  The Court will adopt the

Report and Recommendation.[1]

## I.      BACKGROUND

This case concerns a civil action in which Plaintiff has raised claims under Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.; the Pennsylvania Human Relations Act

("PHRA"), 43 P.S. § 951, et seq.; and 42 U.S.C. § 1981.  Plaintiff was employed by Defendant

to assemble motorcycle parts.  (Doc. No. 30 ¶ 3; Doc. No. 43 ¶ 3.)  Between July 2007 and

November 2007, Plaintiff made five complaints to Defendant regarding her coworker Timothy

Denlinger.  Specifically, she complained that Denlinger made her feel uncomfortable because he

stared at her for long periods of time, unnecessarily came into close proximity to her, used the

---

[1] The Magistrate Act, 28 U.S.C. § 636, and Federal Rule of Civil Procedure 72(b),
provide that any party may file written objections to a magistrate's proposed findings and
recommendations.  In deciding whether to accept, reject, or modify the Report and
Recommendation, the Court is to make a de novo determination of those portions of the Report
and Recommendation to which objection is made.  28 U.S.C. § 636(b)(1).

water cooler closest to her, and removed a tool from her back pocket.  Defendant asserts that all of Plaintiff's complaints were investigated, and that Denlinger was instructed to avoid Plaintiff, even though none of Plaintiff's complaints were substantiated.  On November 5, 2007, Plaintiff's supervisor filed a written disciplinary "consultation" against Plaintiff, stating that "no fault or wrongdoing was found in the actions of . . . Denlinger," and that if she continued to cause disruption and waste time – purportedly by making frivolous complaints – the next disciplinary measure would be the issuance of a verbal warning.  (Doc. No. 43-18.)  Plaintiff contends that Denlinger continued to stare at her and come into close proximity to her, but that she made no further complaints because she feared that her employment would be terminated if she did so.  Plaintiff filed this present action asserting that Defendant discriminated against her on the basis of her race and sex, that she was subjected to a sexually and/or racially hostile work environment, and that Defendant failed to afford her equal rights and benefits on the basis of her race.

The factual details and legal standards governing Defendant's motion for summary judgment are comprehensively set forth in Judge Methvin's report and need not be reproduced here.  In her report, Judge Methvin recommends that Defendant's motion for summary judgment be granted because Plaintiff failed to establish a prima facie case of race or sex discrimination, a hostile work environment claim, a breach of contract claim under 42 U.S.C. § 1981, or a viable equal rights claim under § 1981.  (Doc. No. 48 at 14, 22, 25-26.)  The Court will address Judge Methvin's findings and recommendations as well as Plaintiff's objections in turn.

## II.     RACE AND SEX DISCRIMINATION UNDER TITLE VII AND THE PHRA

Plaintiff's first objection is that Judge Methvin incorrectly found that Plaintiff failed to

establish a prima facie claim of discrimination under Title VII and the PHRA.  (Doc. No. 49 ¶¶ 2, 4-5.)  To make out a prima facie case under Title VII, a plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she was qualified for the position she sought to retain; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination.  Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008).  In support of the third element, Plaintiff must set forth evidence that the action "effect[ed] a material change in the terms or conditions of . . . employment."  Weston v. Pennsylvania, 251 F.3d 420, 431 (3d Cir. 2001).

Judge Methvin found that Plaintiff's claim failed as a matter of law because Plaintiff did not present evidence satisfying the third and fourth elements.  (Doc. No. 48 at 13-14.)  With respect to the third element, Judge Methvin correctly found that the written disciplinary "consultation" that Plaintiff received on November 5, 2007, was not an adverse employment action, as Plaintiff set forth no evidence demonstrating that the consultation resulted in a demotion or denial of a promotion or pay raise, change in her work schedule or hours, or reassignment to a different position or location in the workplace.  See Weston, 251 F.3d at 431; see also Mieczkowski v. York City Sch. Dist., 414 F. App'x 441, 447 (3d Cir. 2011).

Plaintiff asserts that there is a genuine issue of material fact as to whether the consultation constitutes an adverse employment action as well as whether she suffered other adverse employment actions because: (1) a record of the consultation was permanently placed in her file "and threatened escalated discipline that included termination;" (2) she was given a negative work assignment; (3) she lost overtime opportunities; and (4) she was unable to perform her job duties because she suffered from emotional and physical ailments due to Defendant's

discrimination against her and Denlinger's harassment.  (Doc. No. 50 at 5.)

Plaintiff's contentions are without merit.  First, the fact that a record of the consultation was permanently placed in her personnel file is not sufficient to establish that it was an adverse employment action.  See Mieczkowski, 414 F. App'x at 447 (holding that letters of reprimand do not constitute adverse employment actions by virtue of being permanently placed in a personnel file).  Further, although the consultation did state that Plaintiff would be subject to progressive discipline if she continued to waste time and cause disruption, it also specifically stated that the next disciplinary measure utilized would be the issuance of a verbal warning, not termination.  (Doc. No. 43-18.)  Accordingly, the Court finds that Plaintiff has not set forth evidence showing that the consultation materially changed the terms or conditions of her employment.  See Weston, 251 F.3d at 431.  Second, Plaintiff has not pointed to any evidence in the record indicating that she was given a "negative work assignment" or how the alleged assignment materially changed the terms or conditions of her employment.  Third, the record evidence reflects that Defendant neither denied Plaintiff overtime nor placed Plaintiff in a position where she could not earn overtime.  In fact, Plaintiff testified that she and her partner decided that she should no longer work overtime.  (Doc. No. 29 at 90.)  Finally, Plaintiff's contention that she suffered emotional and physical ailments cannot be deemed adverse employment actions in the absence of any evidence indicating that the terms or conditions of her employment were materially changed.  See Weston, 251 F.3d at 431.  Because Plaintiff has failed to present evidence demonstrating how Defendant's actions materially changed her employment status, the Court finds that Plaintiff's objection regarding the third element of a prima facie case of discrimination fails.  Accordingly, Plaintiff is unable to establish a prima facie case of

discrimination under Title VII or the PHRA, and the Court need not address Plaintiff's objection

regarding the fourth element.

## III.    HOSTILE WORK ENVIRONMENT

Plaintiff next objects to Judge Methvin's recommendation that summary judgment be

entered in Defendant's favor on her hostile work environment claim.  (Doc. No. 50 at 8-11.)  To

establish a hostile work environment claim under Title VII or the PHRA, a plaintiff must

demonstrate that: "(1) [she] suffered intentional discrimination because of [her] sex [or race]; (2)

the discrimination was [severe and] pervasive;[2] (3) the discrimination detrimentally affected the

plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex

[or race] in that position; and (5) the existence of respondeat superior liability."  Andrews v. City

of Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990) (footnote omitted).  A hostile work

environment is one that is "permeated with discriminatory intimidation, ridicule, and insult, that

is sufficiently severe or pervasive to alter the conditions of the victim's employment and create

an abusive working environment."  Harris, 510 U.S. at 21 (internal citations and quotation marks

omitted).  In determining the existence of a hostile work environment, the Court must examine

the "totality of the circumstances."  Andrews, 895 F.2d at 1485-86.

Judge Methvin found that Plaintiff's hostile work environment claim fails as a matter of

law because she failed to satisfy any of the five elements necessary to establish a prima facie

case.  (Doc. No. 48 at 22.)  Even if, arguendo, Plaintiff could satisfy some of the elements of a

---

[2] In Andrews, the United States Court of Appeals for the Third Circuit used the language, "pervasive or regular."  895 F.2d at 1482.  Subsequently, the United States Supreme articulated the standard for hostile work environment claims as being "severe or pervasive."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).  The Third Circuit has since recognized that "severe or pervasive" is the proper standard.  Jensen v. Potter, 435 F.3d 444, 449 n.3 (3d Cir. 2006).

hostile work environment claim based on either race or sex disrimination, she has failed to present evidence that the conduct underlying her claim was sufficiently severe or pervasive to satisfy the second element of the Andrews test.  To satisfy the second element, "the harassment must be so severe or pervasive that it alters the conditions of the victim's employment and creates an abusive environment." Weston, 251 F.3d at 426.  A court should consider several factors in determining whether an environment is hostile or abusive, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; [and] whether it unreasonably interferes with an employee's work performance." Id. (quoting Harris, 510 U.S. at 23).  Further, the Court is mindful that Title VII should not be used to impose a "general civility code" on the workplace.  Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).  Judge Methvin concluded that Denlinger's conduct, although potentially "provoking" and "creepy," did not rise to the level of severity to be actionable.  (Doc. No. 48 at 19.)

Plaintiff now contends that Denlinger threatened and humiliated her nearly every day for about one year and that she suffered a workplace injury due to his actions.  (Doc. No. 50 at 9.) Plaintiff is unable to identify any evidence in the record to support her allegation that she suffered an injury due to Denlinger's actions.  Further, the record evidence relating to Denlinger's conduct does not support Plaintiff's allegation that Defendant harassed her nearly every day over a one-year period.  Rather, the record evidence relating to Denlinger's conduct – which Plaintiff reported to Defendant via complaints – amounts to four allegations over a period of approximately three months, from July 27, 2007 to November 1, 2007: (1) four instances of Denlinger staring at Plaintiff, including one in which he stared at her backside and another in

which, after Plaintiff told him to stop staring, he told her to "stop being a dick;" (2) two instances in which Denlinger used the water cooler closest to Plaintiff; (3) one instance in which Denlinger removed a tool from Plaintiff's back pocket, thereby brushing against her buttocks; and (4) one instance in which Denlinger walked behind Plaintiff and made her feel uncomfortable. (Doc. No. 44 at 9-12; Doc. No. 48 at 4.) Plaintiff also alleges that "she did not report Denlinger's persistent acts to harass her that occurred after November 2007" because she feared her employment would be terminated if she did so. (Doc. No. 44 at 12.) These alleged "persistent acts" occurred between February 2008 and April 2008: (1) one instance in which Denlinger walked up behind Plaintiff and welcomed her back to work after she returned from a six-week leave of absence; (2) one instance in which Denlinger worked behind Plaintiff for approximately ten minutes, prompting Plaintiff to switch places with a coworker; and (3) two instances in which Denlinger walked behind Plaintiff and was so close to her that she could feel his breath. (Doc. No. 43-1.)

The Court finds that the conduct that Plaintiff alleges does not rise to the level of "extreme" conduct required for maintaining a hostile work environment claim. Faragher, 524 U.S. at 788. Denlinger's only conduct that occurred with any frequency – the staring and coming into close proximity to Plaintiff – was not severe. See Mendoza v. Borden, Inc., 195 F.3d 1238, 1247-49 (11th Cir. 1999) (finding that "constant" following and staring at the plaintiff in a "very obvious fashion," in addition to other inappropriate conduct, was insufficient to support a hostile work environment claim); see also Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 716 (3d Cir. 1997) ("[M]ute gestures . . . cannot in itself be characterized as particularly severe."); Bishop v. Nat'l R.R. Passenger Corp., 66 F. Supp. 2d 650, 655 (E.D. Pa.

1999) (finding that allegations of staring, whispering comments, and strange looks were not severe enough to support a hostile work environment claim).  Plaintiff described the staring as making her "nervous and jittery," but she does not allege that Denlinger made any sexual or racist comments to her or that he attempted to touch her in any way, except for the incident in which he removed a tool from her back pocket.  (Doc. No. 43-1 at 8.)  Although inappropriate comments and touching are not required to establish a hostile work environment claim, the Court considers their absence in assessing the severity of Denlinger's conduct.  See Harris, 510 U.S. at 22.

Regarding Denlinger's walking behind and otherwise coming into close proximity to Plaintiff, the record evidence indicates that Plaintiff and her coworkers worked side-by-side in work areas of limited space.  (Doc. No. 43-1 at 17-18; Doc. No. 43-5 at 5-6; Doc. No. 43-6 at 2; Doc. No. 43-13 at 8.)  Specifically, Plaintiff testified that she worked in "zone 14" with eight others, with the coworker closest to her approximately one arm length away from her.  (Doc. No. 43-1 at 17-18.)  Similarly, Kayla Redding, one of Plaintiff's supervisors, testified that "there isn't a whole lot of space between the motorcycle and the material rack" in each work zone, and that employees worked within one foot of the person in front of them.  (Doc. No. 43-5 at 7.) Thus, the fact that Denlinger, who worked as a "floater" between different work zones, sometimes came within close proximity to Plaintiff is innocuous.  Further, Plaintiff can point to no evidence that would suggest that Denlinger's conduct was physically threatening or humiliating.

Finally, the Court finds that the incident in which Denlinger touched Plaintiff's buttocks while removing a tool from her back pocket, even when considered along with the other

allegations, is not sufficiently severe to establish a hostile work environment claim.  According to Plaintiff, Denlinger "came from behind [her] and asked if he could use the cutters. [She] replied yes to him.  The cutters were located in [her] back pocket . . . [a]nd before [she] could . . . give the cutters to Denlinger, he reached in [her] back pocket and removed the cutters, touching [her] on the backside." (Doc. No. 43-1 at 13.)  Even accepting this allegation as true, the Court finds that it did not unreasonably interfere with Plaintiff's work performance.  Conduct far more severe, and unquestionably more inappropriate, than that alleged here has been found by courts to be insufficient as a matter of law to prove a hostile work environment.  See Weiss v. Coca-Cola Bottling Co., 990 F.2d 333, 337 (7th Cir. 1993) (finding that a male coworker's conduct consisting of several incidents of unwanted touching, attempts to kiss, and asking a female employee out on dates did not create a hostile work environment); Arasteh v. MBNA Am. Bank, N.A., 146 F. Supp. 2d 476, 495 (D. Del. 2001) (rubbing of plaintiff's legs, complimenting plaintiff's clothes, and staring at her chest an unspecified number of times too commonplace, vague, and infrequent to be considered severe or pervasive); Saidu-Kamara v. Parkway Corp., 155 F. Supp. 2d 436, 439-40 (E.D. Pa. 2001) (finding that defendant's repeated sexual comments, patting plaintiff on the buttocks and breast, and making harassing comments about plaintiff's family background were not sufficient to state a hostile work environment claim).

Viewing the facts in the light most favorable to Plaintiff, no reasonable fact finder could find that Denlinger's conduct amounts to a hostile work environment.  The incidents that Plaintiff alleges, even when viewed together, do not suggest a workplace "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris,

510 U.S. at 21 (internal citations and quotation marks omitted).  Based on the totality of the circumstances, the Court finds that Plaintiff has failed to present evidence that Denlinger's conduct was sufficiently severe or pervasive and, as a result, her objection as well as her hostile work environment claim fails.[3]

## IV.    SECTION 1981 CLAIMS

Plaintiff's third objection is that Judge Methvin incorrectly found that there was not sufficient evidence presented to establish claims for breach of contract and denial of equal rights under 42 U.S.C. § 1981[4] because "Defendant acted intentionally and with reckless indifference to Plaintiff's known federally protected rights by treating Plaintiff less favorable than non[-]African American and male employees who made complaints that were not substantiated by supervisors."  (Doc. No. 49 ¶ 10; Doc. No. 50 at 12.)  Judge Methvin concluded that Plaintiff's breach of contract claim fails because Plaintiff did not present evidence demonstrating that she had an express or implied contract with Defendant.[5]  (Doc. No. 48 at 24-25.)  Further, Judge

---

[3] In addition to objecting to Judge Methvin's findings with respect to each of the five elements of a hostile work environment claim, Plaintiff objects to Judge Methvin's "finding that an intent to discriminate to create a hostile work environment cannot be found from the entire context of this case and from the conduct of the involved actors."  (Doc. No. 49 ¶ 6.)  A de novo consideration of this argument leads the Court to find that Judge Methvin correctly considered the totality of the circumstances in determining that the record evidence did not demonstrate that Denlinger's conduct created a hostile work environment.

[4] 42 U.S.C. § 1981(a) states in pertinent part: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ."

[5] The Court also notes that, as Judge Methvin recognized, Plaintiff did not address this claim in her brief in opposition to Defendant's motion for summary judgment and, therefore, Defendant's motion with respect to this claim may be considered unopposed.  See M.D. Pa. L.R. 7.6 (explaining that a party will be deemed not to oppose a motion if he does not file an

Methvin concluded that Plaintiff's equal rights claim fails because Plaintiff did not set forth evidence showing that she suffered an adverse employment action or that there were circumstances giving rise to an inference of discrimination. (Id. at 25.) A de novo consideration of this argument and the record evidence leads the Court to conclude that Plaintiff's objection is without merit. The Court finds no error in Judge Methvin's conclusion that summary judgment is warranted because there is no genuine issue as to any material fact and Defendant is entitled to judgment as a matter of law with respect to Plaintiff's § 1981 claims.

## V.  PUNITIVE DAMAGES AND EMOTIONAL DISTRESS CLAIMS

Next, Plaintiff objects to Judge Methvin's finding that Plaintiff did not set forth sufficient evidence to establish claims for punitive damages and emotional distress. Judge Methvin correctly found that these claims must be dismissed because Defendants are entitled to summary judgment on all of Plaintiff's other claims. (Doc. No. 48 at 26.) Therefore, this objection fails.

## VI.  CREDIBILITY DETERMINATIONS

Plaintiff's final objections are that Judge Methvin improperly "made credibility determinations in reaching her findings" and "substituted her opinion for that of the factfinder (jury)." (Doc. No. 49 ¶ 3; Doc. No. 50 at 7.) Plaintiff does not specify the particular credibility determinations that Judge Methvin allegedly made. After a de novo consideration of this argument,[6] the Court finds that Plaintiff's objection is without merit.

**AND NOW**, on this 30th day of November 2011, **IT IS HEREBY ORDERED THAT:**

---

opposition brief).

[6] To the extent that paragraphs 1 and 13 of Plaintiff's objections (Doc. No. 49) constitute objections to Judge Methvin's Report and Recommendation, the Court finds that they are also without merit after a de novo consideration of the record.

1.      Plaintiff's objections to the Report and Recommendation (Doc. No. 49) are
        **OVERRULED.**

2.      Magistrate Judge Methvin's Report and Recommendation (Doc. No. 48) is
        **ADOPTED.**

3.      Defendant's motion for summary judgment (Doc. No. 28) is **GRANTED**.  The
        Clerk of Court is directed to enter judgment in favor of Defendant.

4.      The Clerk of Court is directed to close the case.


        ___S/ Yvette Kane_____
        Yvette Kane, Chief Judge
        United States District Court
        Middle District of Pennsylvania